Yes, Your Honor, the appellant is ready. Please proceed. Thank you, Your Honor. My name is David Dow, and I represent Mr. Carl West, who is here today. Mr. West served approximately 10 years in prison before certain information was learned and ultimately resulted in the dismissal, with prejudice, of the charges, the criminal charges that were against him. Mr. West is here today to seek justice for the wrongful conviction and incarceration. The standard of review is de novo, since it was dismissed by the complaint. Counsel, I have a concern about our own jurisdiction in this case. Can you tell us whether the appropriate notice was filed under the Federal Tort Claims Act? It was subsequently filed, Your Honor. It was not originally filed, and we believe that we do have an equitable argument on that, Your Honor. It was filed ultimately within the two-year period. Well, let me, just following up on Judge O'Scanlon, let me actually step back one small step before that. The complaint in district court was filed. Was that complaint filed within the two years? Yes, it was, Your Honor. So it was filed within the two years. Yes. But was it, like, on the last day of the two years, perhaps? It was near the end, yes, Your Honor. It was very close to the end, either the last day or the day before. Yeah. So there was no time to exhaust administration. We didn't do it, but we ultimately did send the letter, Your Honor. If you just listen to my question and answer my question, we're going to get much farther ahead. Yes. I've been in front of Your Honor before, and you are correct, Your Honor. I don't know that you've ever been wrong. I think by definition I'm correct. Yes, yes, you are correct, Your Honor. But this is not a trap. I'm just trying to understand. So if on the day that Mr. West's complaint was filed in district court, if he had taken it and presented it to the agency on that day, it would have been timely. Yes. I'm stating a statement, but I'm asking a question. Do you agree with that? I agree with that, Your Honor. So he went to the wrong place and filed in district court. Correct. Okay. Having filed in district court without having exhausted remedies, this court at that point had no jurisdiction. You don't disagree with that? I'm not sure about that, whether that would be inequitable under the circumstances. They did get notice of it by the complaint, and we ultimately did do that, Your Honor. But I can see your point on that issue. Again, I'm just stating what I think are facts. Sure. The fact is, at that point, he has no administrative complaint, and without an administrative complaint, the district court lacks jurisdiction. Yes, Your Honor. Okay. So there are, as I see, two theories by which you could cure that. One of them is to say you sort of got your place in line in the district court, and then you go exhaust. You filed something in one of the places, and that's got the process going, and then that made the administrative complaint, which was filed later, timely, because you touched first base, so to speak, within the time period. So that is not a tolling argument at all. That's an I'm timely argument. I just did it in the wrong sequence argument. Are you making that argument? I am, Your Honor, that we did at least do it, and then we did it correctly later, and that there was no harm here to the defendant under these circumstances. The alternative argument is, yes, it is untimely, but now under the Supreme Court case Wong, there is, what's the standard, excusable neglect or there's tolling. There's tolling if there's some concealment and some other things under the Wong case. And what do you have to support the tolling argument? We do have to support the tolling argument that Agent Gordwin had concealed this information, and ultimately he was found out and told the United States what he had done, and despite the fact that Mr. West was in prison during this time, the United States did not come forward and let us know what had occurred here, that there had been this perjury and this manipulation by Agent Gordwin. Now, given that the district court under this line of analysis doesn't have jurisdiction, again, you've got some alternative line of analysis saying you got under the tent on time. You just did it in the wrong sequence. But under this theory, the district court doesn't have jurisdiction. If the district court doesn't have jurisdiction, we don't have jurisdiction except to hear the appeal. Yes. And all those equitable arguments really can't be made because a court without jurisdiction is a court without ears, right? Right. No, I mean, that's, you know, you can only make equitable arguments to a court that has jurisdiction. So under that theory, why wouldn't a dismissal, why wouldn't dismissal be appropriate? And the sequence of events would be you present your client's claim to the agency, then come back to district court once having exhausted, and then make the equitable tolling argument at that point. Well, regardless, it shouldn't have been dismissed with prejudice, Your Honor. There's a big difference between allowing us to come back in and dismissing it with prejudice on certain of these claims because we do believe that is very critical to what's going on here, that these claims shouldn't have been dismissed with prejudice. If we didn't exhaust the administrative remedies, that should have been a without prejudice and allow us to come back in and do it appropriately. So your point is that the district court, in a sense, adjudicated some of the claims. It did. Even though it didn't have jurisdiction. Correct. And, in fact, it went so far as Mr. Gordwin, who wasn't served, never appeared, went on to dismiss Mr. Gordwin from the case. When I asked Mr. Gordwin, was he ever served? Not in this particular case, no. Well, then there's no jurisdiction over him or that claim, is there? No, there shouldn't have been, but the court dismissed him and did kind of some extraordinary things in this case. And we don't think they should have dismissed it with prejudice and they shouldn't have done anything with Mr. Gordwin. Well, let me make sure I understand your position. I mean, you've got several positions, obviously, along the way. But if, and of course I can't speak for the panel, and I can't even speak for myself because I haven't made up my mind, but if we were to enter an order saying all matters should have been dismissed by the district court without prejudice, I'm not saying that's what we're going to do. I'm just testing the theory. If we were to enter an order saying that, remand the district court for dismissal of all claims without prejudice, would you have an objection to that?  Now that we have done the appropriate matters, I would have no objection to that, Your Honor. And that's where I would like to be, actually. Well, now you're getting into questions of district court procedure, which I haven't been in district court in a long time, so I don't know what happens. So if you dismiss it without prejudice, can you have leafs on end? Yes, you certainly can. But I assume you would be relying on the actual notice you did file, which you claim is within the appropriate statutory time. Yes. Yes. And we would like dismissal without prejudice with leaf to amend. We would be happy with that compromise decision, Your Honor. I wasn't offering a compromise. I know. I was willing to accept it. No, no. I was just trying to understand your position. I was trying to understand what you are trying to achieve here. Right. Not that that's necessarily a correct decision, but so what you're really objecting to is the dismissals of various claims without prejudice. With prejudice. I'm sorry. Excuse me. With prejudice. Yes. Now, it seems to me, and I don't want to monopolize you here, but it seems to me that at least some of the claims you conceded, they should have been dismissed with prejudice, like the IAD claim. The Intentional Infliction of Emotional Distress. That's the one. That's the one. No, we don't concede that, really, Your Honor. We think that each day that he was incarcerated and they didn't correct the situation that that was an intentional infliction of emotional distress, and that was a continuing violation of his rights. And, in fact, Mr. West suffered greatly by that. He went in with 120 IQ and came out substantially below average, and he has been mentally incapacitated ever since. And he has been involuntarily committed numerous times. Yes. In the opposition to the motion to dismiss in the state court, you said as to Counts 1 to 4, Plaintiff did not allege a cause of action against defendant of the United States. Not against the United States, but at least against Gordwin. I see. Yes. So let me then say, was that a concession that there is no IAD claim against the United States? I think that's correct, Your Honor. So that one should have been dismissed against the United States. Right. With prejudice. Yes. Okay. Now, am I confused here? But I had the impression that you were arguing as to Gordwin, 1983 claims as to Gordwin. We do have other claims against Mr. Gordwin, yes. But he's not a state agent. 1983 doesn't apply to him. Were those sort of disguised Bivens claims? There's a Bivens type of claim even now. A Bivens claim? Yeah, a Bivens claim. You just got the wrong label? Yeah. Yes, you're right. You're right. It's a Bivens type of claim. So that was meant to be a Bivens claim. So if I can just move things along, your position is that that should have been read as a Bivens claim. Yes. Because it's the identical things. You just called it the wrong thing. Right. Okay. Yes.  I think I am, Your Honor. Thank you very much. We'll hear from the government. I appreciate the opportunity to be in front of you again. Peter Lantka for the United States, Your Honors. May it please the Court. Are you in the torts branch? No, I'm in the District of Arizona. I'm a little warmer than the torts branch, sir. I was going to ask whether you were surprised, as I was, by Wong, by the fact that the Supreme Court had said there's equitable tolling in tort cases against the United States. Well, Wong actually came out of the District of Arizona, so, yes, we were fairly surprised. Of all the results in Wong that I could have imagined, I was completely taken aback by what they did. But there it is. Well, Your Honor, actually, that's a wonderful segue to the res judicata argument that we raised before. Wong does not apply to those cases that were decided in West 1 by District Judge Sedgwick. I draw Your Honor's attention to the Supreme Court decision of Federated Department Stores v. Mowight, 452 U.S. 394, and Paolo v. Holder, which is this Court's decision in 2011, 669 F. 3rd 911. Are these cases referred to either in a 28-J or in the briefs? No, they're not, Your Honor. I anticipated the argument after reading Plaintiff's reply. And what they stand for, the proposition is once you have read it. This happened while you were waiting to argue? No, it happened last night while I was reading the brief. Oh, and you didn't file anything. Did you at least provide opposing counsel citations? Your Honor, I have not. I can omit the argument orally, if that's all right, or supplement with a 28-J letter. The cases were from 2011. It makes it difficult when you're the only one in the courtroom aware of these cases and able to look at them and study them. It makes it difficult for any of us to follow along. So you can talk, but it doesn't advance the cause. It doesn't give your opposing counsel a chance to respond. So even if it is just the night before, and lawyers say that to me all the time, oh, I only discovered it last night. So in the days when we actually had people come here on horseback, then providing something to opposing counsel that you discovered last night was difficult. But you could easily have sent an e-mail to your opposing counsel, right? Correct, Your Honor. And you could have filed something this morning or last night with CMECF. I'm sorry, PACER. And, sir, I'm not relying on this. I'm not. I'm just telling you for the future. No, I understand. For the future. It just makes it easier. Why don't you go ahead and make your argument and then provide us the cases? Correct, sir. By way of a 28-J letter. But you do have a res judicata argument, so go ahead and pursue that. Understandable. They do not reflect a change in the law at all. In West 1, the court correctly held that counts, in that case, 4, 7, 8, and 9, which are identical here to 4, 7, 9, and 10, were untimely. That decision was upheld. I'm sorry. West 1 was west against who? The city of Mesa and Officer Jeffrey Jacobs. This is against the local authorities. It was a joint task force, Your Honor. So the federal, the feds, and the local police were working in concert for this gang task force. And there was a dirty cop on the federal side, right? I'm sorry? There was a dirty cop on the federal side? Correct. We don't represent Mr. Godron, so I can't speak whether or not he was. Former FBI agent Godron. Correct. He was indicted and he was discharged. Well, but there's no doubt that he engaged in chicanery that affected plaintiff here, right? Correct. There is no doubt at all, and I hope it doesn't, is not. Yeah, I'm, you know, so there was a dirty cop on the fed side and a dirty cop on the state side too, right? No, not at all. Not at all. There's never been any determination that the. . . That Jacobs was? I thought Jacobs was as well. He has been alleged, but there's never been any determination that any statements were illicit, that he knew of the affair. If you read the transcript for the post-conviction relief hearings, Jeffrey Jacobs testified that he was unaware of the affair until the indictment and investigation. Your Honor, I think those. . . So I was just trying to see what the parallel between the two cases. So your position is that was the case against the city, county? The city. The city. And the municipal officer. And the cop. Correct. And West 3, which was filed in February of 2014, included everyone, the United States, the city officer, as you put it, the FBI agent, several supervisors, and the FBI. Many of the claims in the SF-95 that wasn't submitted until August of 2013 were determined untimely in an initial motion to dismiss in that matter. That matter has been adjudicated in favor of the United States on summary judgment. What were those claims? Sure. Those claims are listed at page 8 of my brief. They were 10 claims, 1983, Bivens, malicious prosecution, two counts for malicious prosecution, 1985, abuse of process, fraud, negligent misrepresentation, negligent supervision, and punitive damages. Are you making a collateral estoppel or res judicata argument? Yes, Your Honor, I am, based on West 1. This court upheld the dismissal of the IIED false arrest, wrongful conviction, and wrongful imprisonment decisions from West 1 because they arose out of the same corpus, the same cause of action. The judge in West 1 determined that Mr. West became aware that those claims accrued, especially the false arrest and wrongful imprisonment, at the time of his conviction under Arizona law. As to the knowledge of Mr. Gordwin's false arrest. Wouldn't he have been barred by Houston v. Locke? No. Hack only applies to the malicious prosecution, and that was addressed both in that case and in this court's appeal. So those causes of actions were never deemed untimely. Those causes of actions were remanded because they required. I'm sorry, hack. You're right. It was hack for something. I got my case confused. But under hack, you understood my question. Yes, sir. So hack would not have barred the other claims? Correct, Your Honor. Hack only, well, I don't know if it bars. Hack allows the malicious prosecution and those claims to move forward because it requires the invalidation of the underlying conviction. Whereas the wrongful arrest and false imprisonment claims under Arizona law accrue at the time of the conviction, which would have happened in 2003 in this case. Now, Mr. Gordwin was indicted in 2008, May 28, 2008. July of that year is when Mr. West filed his petition for post-conviction relief, citing the false statements in the indictment. And this was raised in our appeal and in the matters below. So he was aware of these false statements under the discovery rule at least in July 25, 2008. The case at bar was not filed until February 11, 2013, over four years later. It's untimely, Your Honor. But getting back to the res judicata, we don't even need to address that because those specific causes of action have already been dealt with and the court need not look at them again. Counsel, I'd like to go back to the colloquy that we've had with your opposing counsel. If we were to dismiss on the basis of lack of jurisdiction, is it your position that the plaintiff here could refile? I don't think my position, Your Honor, would be I don't think you have to dismiss for lack of jurisdiction. And the case law cited in the government's moving responsive papers, Judge Snow and West, too, was well within his right to deny leave to refile if something is untimely. And cited on page nine of my brief, Judge Snow's decision as to when a claim accrued, the factual determination for jurisdiction is reviewed for clear error. And what he did is he cited this court's determination from West 1 that those claims accrued at the time of conviction, which was 2003, at the latest, 2008, and the claim wasn't filed. The SF-95 was not filed until August of 2013. And I think it's important that neither that complaint nor the- The Claims Act wasn't filed within the two-year period? Correct, Your Honor. And the actual notice which resulted in West 3, the claim initiated in February 2014, did not include the counts which were dismissed with prejudice. They were everything else that I just read. The chart on page eight of the APALE brief is after West 1 and 3 were consolidated. In the record is the initial complaint. But those claims were never exhausted, Your Honor. I see my time has expired. Are there any more questions? No, I think we're fine. Thank you. Thank you. You are out of time, but if you'd like to take a minute for a bottle, we'll give it to you. You might want to address the res judicata argument. I'm sorry, Your Honor? You might want to address the res judicata argument. Oh, the res judicata argument? Certainly. We believe that there is a difference. There's different actors. There's different time frames, different entities involved between MESA and the U.S. government. Additionally, the theory of equitable tolling does not apply to the claims necessarily against the city of MESA. That is not a federal claim type of situation where those equitable tolling arguments come in. Arizona is a little different standard and different things to be addressed under those circumstances, Your Honor. Those were all dismisses untimely? I thought some of them were dismissed on the merits. Some were dismissed on the merits. But most of this case has been dismissed as untimely, the theory being that he had to file while he was in prison, I guess, which was difficult and mentally ill. I see. Okay. Thank you. Thank you. Cases argued will stand submitted.
judges: Kozinski, Noonan, O'Scannlain